### UNITED STATES v. ONE FORD PICK–UP TRUCK, 1951 MODEL, MOTOR NO. FIR INR 11634.

#### Civ. A. No. 520.

United States District Court,
W. D. Virginia, Roanoke Division.

May 21, 1951.

R. Roy Rush, Asst. U. S. Atty., Roanoke, Va., for the United States.

C. Carter Lee, Rocky Mount, Va., for defendant.

BARKSDALE, District Judge.

This action having been tried upon the facts by the court without a jury on May 10, 1951, the Court doth hereby find the facts specially and state separately its conclusions of law thereon, and directs the entry of the appropriate judgment, as follows:

#### Findings of Fact.

On February 4, 1951, Officer Young of the Alcohol Tax Unit, with another Alcohol Tax Unit investigator and a State A.B.C. investigator, were making investigations in Floyd County, Virginia. As they approached a country store, they saw the Ford Pick-Up truck, here in controversy, parked off the road near the store. Officer Young recognized respondent Fred Turner, who was the registered owner of the truck, sitting at the wheel and observed three other young men with him in the cab of the truck. Knowing that Fred Turner had a record and reputation of violating the internal revenue laws relating to liquor, the officers turned their car around, came back and stopped alongside the parked truck. One officer opened the door and observed a half gallon fruit jar full of illicit whiskey on the floor just to the right of Turner's feet. The three other men in the cab were Harold Allen, a soldier on furlough, and his two brothers. All four men, with the possible exception of Maynard Allen, had been drinking and were intoxicated in varying degrees. As the three Allen brothers descended from the cab, the officers observed another half gallon jar of illicit whiskey on the seat where they had been sitting. Some of the whiskey from this jar had been consumed. In the front compartment, there

was a pint bottle with less than an ounce of illicit whiskey in it. As soon as the officers discovered the illicit liquor, the soldier, Harold Allen, said, "Well, its mine and you can't do anything with me, I'm in the Army."

I find that some time earlier in the day, Harold Allen had procured the two half gallons of illicit liquor from an unknown source and brought them with him to the truck in controversy. Finding no one in the truck, he placed the two jars in it and went to the store, where he found Fred Turner and his two brothers. Harold Allen invited the three of them to go down to the truck and take a drink. The other two Allens had come to the store with Fred Turner in his truck. Turner and the other two Allens accepted Harold Allen's invitation, and after they had gotten into the cab of the truck and had taken a drink, Fred Turner said, "We will have to get this whiskey out of the truck." However, Fred Turner made no further protest about the whiskey being in the truck, and the four men continued to sit in the truck and drink the liquor for about half an hour, until the officers arrived. Turner and the three Allens had known each other and been friends practically all their lives.

I find that the illicit liquor found in the truck belonged to Harold Allen and that neither Fred Turner nor his truck had any part in the removal of the liquor from its source to the truck. However, I find that after Fred Turner discovered the illicit liquor in his truck, he aided and abetted in the continuation of the use of his truck for the deposit and concealment of the liquor. I further find that the truck was used for the deposit and concealment of the illicit liquor from the time Harold Allen placed it therein until the arrival of the officers. No tax had been paid upon the two half gallons of whiskey found in the truck and no one concerned intended to pay any such tax. The whiskey was deposited and concealed in the truck with the intent to defraud the United States of its tax.

## Conclusions of Law.

From the facts which I have found, my conclusions of law are as follows:

The applicable statute is 26 U.S.C.A. § 3321(b)(3), which is as follows: "*Conveyances.* Every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited."

In order to justify a forfeiture of the truck here in controversy, it must have been "used in the removal or for the deposit or concealment" of the illicit liquor. From the facts found, it does not appear that the truck was in any way used for the *removal* of the liquor. After the liquor was placed in the truck, the truck made no movement at all. The only movement of the liquor itself was the lifting of one jar for the purpose of drinking from it, and I do not conceive that this is such a removal as is contemplated by the statute. Wiggins v. United States, 4 Cir., 99 F.2d 184.

However, it seems to me clear that the evidence requires the conclusions that Harold Allen deposited and concealed the liquor in the truck, and that when the respondent Fred Turner discovered the liquor deposited and concealed in his truck, he aided and abetted in the continuation of the deposit and concealment therein.

The sole issue in this proceeding is the forfeitability of the vehicle. However, in my opinion, Fred Turner's conduct would require the denial of a petition for remission on his part, had such been filed. The fact that the truck was used for the deposit and concealment of the illicit liquor, seems to require its forfeiture notwithstanding the fact that no use of the truck was made for the removal of the liquor. Speaking of Section 3450 of the Revised Statutes, from which the presently applicable statute, 26 U.S.C.A. § 3321, was derived, the Supreme Court said, in United States v. One Ford Coupe, 272 U.S. 321, 329, 47 S.Ct. 154, 157, 71 L.Ed. 279: "Nor does the language of section 3450, or its history, indicate that Congress intended to limit the proceeding under that section to cases where the vehicle was used for deposit or concealment as part of the illegal act of removal, or to make it applicable only where the article concealed had been unlawfully removed

516

from the place where the tax should have been paid."

And further at page 331 of 272 U.S., at page 157 of 47 S.Ct., the Court said: "Thus section 3450 applies to a vehicle, whether used for removal, deposit, or concealment, and even although the vehicle is not in motion and movement was never contemplated; * * *."

Respondent relies on the case of Vandevander v. United States, 5 Cir., 172 F.2d 100, but I do not find anything in that opinion inconsistent with the conclusions which I have reached. In that case, the question was whether or not the automobile there in controversy was used "with intent to defraud the United States" of its tax. The court submitted this issue to a jury, and the jury failing to agree, the court discharged the jury, and upon the Government's motion, entered a judgment of forfeiture. In reversing, the Court of Appeals held that whether or not the Government had borne the burden of proof as to intent was questionable and that this issue must be determined by the verdict of a jury.

The Court said, at page 102 of 172 F.2d: "* * * But we do not know of any presumption of law that the presence of a quart of corn whisky in the hands of a guest in an automobile, with no showing at all about the source or non-taxation of it, and with no intent proved except to drink it, demands a forfeiture of the automobile. On the contrary, the language of the statute, and all the decisions called to our attention, are to the effect that there must be present an intent to defraud of the tax; or at least a knowledge that the tax has not been paid and will not be if the untaxed whisky is removed. Such knowledge and intent of course may be shown by the circumstances, and the claimant's testimony about it may be disbelieved; but the question is one of fact, and not of law."

In the instant case, the proof clearly shows that no taxes had been paid on the whiskey found in the truck here in controversy, and that none would be paid. The facts thoroughly justify the conclusion that the removal of the whiskey by Harold Allen and the deposit and concealment there-

of in the truck, were with the intent to defraud the United States of its tax.

I therefore conclude that the truck in controversy was used for the deposit and concealment of whiskey, a commodity in respect whereof a tax has been imposed, with intent to defraud the United States of such tax, and therefore it must be forfeited. An order will be entered accordingly.